No. 24-20550

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ARTURO MENDOZA,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

————————

**BRIEF FOR APPELLANT**

————————

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

EVAN G. HOWZE
Assistant Federal Public Defender
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002
(713) 718-4600

## CERTIFICATE OF INTERESTED PERSONS

United States v. Arturo Mendoza,
No. 24-20550

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

1.  District Judges: Hon. Gray H. Miller and Charles Eskridge

2.  Appellant: Arturo Mendoza

3.  Appellant's Counsel: Federal Public Defender Philip G. Gallagher; and Assistant Federal Public Defenders Alex O. Rosa-Ambert and Evan G. Howze

4.  Appellee: United States of America

5.  Appellee's Counsel: United States Attorney Nicholas J. Ganjei; and Assistant United States Attorney Luis Batarse

s/ *Evan G. Howze*
EVAN G. HOWZE

ii

## STATEMENT RESPECTING ORAL ARGUMENT

Oral argument is not necessary. The questions presented are straightforward and capable of resolution by reference to the briefs and record alone.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ................................................................... ii

Statement Respecting Oral Argument...................................................... iii

Table of Citations ...................................................................................vi

Statement of Jurisdiction.............................................................................1

Statement of the Issues..............................................................................2

Statement of the Case.................................................................................3

Summary of the Argument ......................................................................15

Argument....................................................................................................17

I.   The judgment should be corrected because it inaccurately reflects the district court's controlling oral sentence as to the form of "location monitoring" imposed as a condition on Mr. Mendoza's supervised release ................................................................................................17

    A.   Standards of review..............................................................17

    B.   The judgment reflects location monitoring coupled with home detention, but the district court expressly rejected that approach in favor of "standalone" location monitoring .......................18

    C.   Whether viewed as a clerical error or conflict between the written and oral sentences, the judgment's failure to reflect the right form of location monitoring warrants correction ...........................20

II.  The district court plainly and reversibly erred by failing to determine the duration of the standalone-monitoring condition ...................................20

    A.   Standard of review ................................................................20

# TABLE OF CONTENTS – (cont'd)

**Page**

B.  The district court's failure to determine how long Mr. Mendoza's location will be monitored on supervised release is an error that is obvious, prejudicial, and worthy of correction ..................................21

III.  The district court plainly and reversibly erred by ordering Mr. Mendoza to comply with financial-disclosure and credit-approval conditions of supervised release ...............................................................................26

A.  Standard of review ..................................................................................26

B.  Both monetary-based conditions should be stricken because each plainly lacks record support ..................................................................26

Conclusion ....................................................................................................33

Certificate of Service ...................................................................................34

Certificate of Compliance ...........................................................................34

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Hughey v. United States*, 495 U.S. 411 (1990) ....................................... 32

*Paroline v. United States*, 572 U.S. 434 (2014) ..................................... 32

*Rosales-Mireles v. United States*, 585 U.S. 129 (2018) ................................... 21, 33

*United States v. Bigelow*, 462 F.3d 378
  (5th Cir. 2006) ........................................................................ 17, 18, 19, 20

*United States v. Campos*, 922 F.3d 686
  (5th Cir. 2019) ........................................................................ 21

*United States v. Duke*, 788 F.3d 392
  (5th Cir. 2015) ........................................................................ 20, 28

*United States v. Etheridge*, No. 22-40516, 2023 WL 5347294
  (5th Cir. Aug. 21, 2023) .............................................................. 32

*United States v. Fields*, 777 F.3d 799
  (5th Cir. 2015) ........................................................................ 21

*United States v. Gordon*, 838 F.3d 597
  (5th Cir. 2016) ........................................................................ 28

*United States v. Herndon*, 807 F. App'x 286
  (5th. Cir. 2020) ....................................................................... 21

*United States v. Huor*, 852 F.3d 392
  (5th Cir. 2017) ........................................................................ 21, 30, 31

*United States v. Martinez*, 250 F.3d 941
  (5th Cir. 2001) ........................................................................ 19

*United States v. Mecham*, 950 F.3d 257
  (5th Cir. 2020) ........................................................................ 3

# TABLE OF CITATIONS – (cont'd)

**Page(s)**

## Cases – (cont'd)

*United States v. Mejia-Banegas*, 32 F.4th 450
(5th Cir. 2022) ..................................................................... 22

*United States v. Mireles*, 471 F.3d 551
(5th Cir. 2006) ..................................................................... 19

*United States v. Ortega*, 19 F.4th 831
(5th Cir. 2021) ..................................................................... 22

*United States v. Powell*, 354 F.3d 362
(5th Cir. 2003) ..................................................................... 17

*United States v. Prado*, 53 F.4th 316
(5th Cir. 2022) ..................................................................... 20

*United States v. Prieto*, 801 F.3d 547
(5th Cir. 2015) ..................................................................... 31

*United States v. Salazar*, 743 F.3d 445
(5th Cir. 2014) ..................................................................... 27

*United States v. Scott*, 821 F.3d 562
(5th Cir. 2016) ....................................................... 17, 20, 26

*United States v. Taylor*, 487 U.S. 326 (1988) ........................... 23, 24, 25

*United States v. Villalobos*, 879 F.3d 169
(5th Cir. 2018) ..................................................................... 32

## Statutes and Rules

18 U.S.C. § 2252A(a)(1) ........................................................ 4

18 U.S.C. § 2252A(b)(1) ...................................................... 4, 5

18 U.S.C. § 2256(8)(C) ......................................................... 3

# TABLE OF CITATIONS – (cont'd)

**Page(s)**

## Statutes and Rules – (cont'd)

18 U.S.C. § 2256(9)(A)(i)(II) ...................................................... 3

18 U.S.C. § 2256(9)(A)(ii) ......................................................... 3

18 U.S.C. § 2259 ..................................................................... 32

18 U.S.C. § 2259(a) .................................................................. 7

18 U.S.C. § 2259(b) .................................................................. 7

18 U.S.C. § 2259(b)(2)(A) ........................................................ 32

18 U.S.C. § 2259(b)(3) .......................................................... 7, 10

18 U.S.C. § 2259(c) .............................................................. 7, 32

18 U.S.C. § 2259(c)(2) ............................................................. 10

18 U.S.C. § 2259(c)(4) ............................................................. 10

18 U.S.C. § 3553(a) .................................................................. 31

18 U.S.C. § 3553(a)(1) ............................................................. 27

18 U.S.C. § 3553(a)(2)(B) ..................................................... 24, 27

18 U.S.C. § 3553(a)(2)(C) ..................................................... 24, 27

18 U.S.C. § 3553(a)(2)(D) ..................................................... 24, 27

18 U.S.C. § 3563(b) .................................................................. 22

18 U.S.C. § 3563(b)(10) ........................................................... 22

18 U.S.C. § 3563(b)(11) ........................................................... 22

## TABLE OF CITATIONS – (cont'd)

**Page(s)**

### Statutes and Rules – (cont'd)

18 U.S.C. § 3583 ................................................................................ 27

18 U.S.C. § 3583(d) ........................................................... 16, 22, 27-28

18 U.S.C. § 3583(d)(1) ...................................................................... 27

18 U.S.C. § 3583(d)(2) ............................................................ 23, 25, 27

18 U.S.C. § 3583(d)(3) ...................................................................... 28

18 U.S.C. § 3664 ........................................................................... 7, 10

18 U.S.C. § 3664(d)(5) ....................................................................... 10

18 U.S.C. § 3664(e) ............................................................................. 7

18 U.S.C. § 3742 ................................................................................. 1

28 U.S.C. § 1291 ................................................................................. 1

Fed. R. App. P. 4(b)(1) ........................................................................ 1

Fed. R. Crim P. 36 ................................................................... 17-18, 20

5th Cir. R. 28.2.1 ................................................................................. ii

### Sentencing Guidelines

USSG § 1B1.1(a)(2) ............................................................................. 5

USSG § 1B1.3(a) ................................................................................. 5

USSG § 2G2.2(b)(2) ............................................................................ 5

# TABLE OF CITATIONS – (cont'd)

**Page(s)**

## Sentencing Guidelines – (cont'd)

USSG § 2G2.2(b)(6) ................................................................. 5

USSG § 5D1.3(d) ................................................................... 29

USSG § 5D1.3(d)(2) (p.s.) .................................................. 16, 29

USSG § 5D1.3(d)(3) (p.s.) .................................................. 16, 29

USSG § 5G1.1(c)(2) ............................................................... 5

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of Texas entered judgment of conviction and sentence on December 12, 2024. Mr. Mendoza timely filed notice of appeal the same day. *See* Fed. R. App. P. 4(b)(1). This Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

**I.** Should the judgment be corrected because it inaccurately reflects the district court's controlling oral sentence as to the form of "location monitoring" imposed as a condition on Mr. Mendoza's supervised release?

**II.** Did the district court plainly and reversibly err by failing to determine the duration of the standalone-monitoring condition?

**III.** Did the district court plainly and reversibly err by ordering Mr. Mendoza to comply with financial-disclosure and credit-approval conditions of supervised release?

## STATEMENT OF THE CASE

***The offense of conviction***. In November of 2019, representatives of Adobe, Inc.—the company that produces the popular Adobe Photoshop software program, among others—alerted federal authorities to 14 image files a particular user had uploaded to the company's "cloud" storage servers. ROA.109. Each of the object images depicted adult women engaging in sexually explicit conduct with adult men—however, each image had been "photoshopped" so as to superimpose the face of one of two minor females over the adult females' faces. ROA.109. Essentially, the images had been modified to depict adult bodies, with children's faces, having sex. ROA.109-10 (describing two representative images). That content—commonly referred to as "morphed" child pornography[1]—meets the federal definition of "child pornography," which, in pertinent part, includes "any visual depiction . . . of sexually explicit conduct" that "has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."[2] 18 U.S.C. § 2256(8)(C). Adobe's data indicated that all 14 images were created on six separate occasions between March 31 and November 21, 2019. ROA.110.

---

[1] *See United States v. Mecham*, 950 F.3d 257, 260 (5th Cir. 2020).

[2] "Identifiable minor," in turn, includes "a person . . . whose image as a minor was used in creating, adapting, or modifying the visual depiction," and "who is recognizable as an actual person." *Id.* § 2256(9)(A)(i)(II) & (A)(ii).

Authorities traced the user's email address to Arturo Mendoza. ROA.110. When confronted, Mr. Mendoza admitted to purchasing the software specifically to create the 14 images. ROA.110-11. He explained that the faces of the two minor girls belonged to his ex-girlfriend's then-12-year-old daughter, I.V., and I.V.'s then-six-year-old cousin, A.C., and that he had created the images "out of revenge because he was angry" at I.V.'s mother, Jennifer Liening. ROA.110, 276. The pictures he used of the two girls came from Ms. Liening's Facebook page, while the images of the adults were downloaded from a pair of pornographic websites. ROA.111. Aside from the 14 modified images, authorities found no other child-pornographic files or materials attributable to Mr. Mendoza in their post-arrest investigations. ROA.154. Nor has any evidence come to light suggesting that one or more of the 14 images ever made its way beyond Adobe's servers to the wider Internet, or that Mr. Mendoza otherwise distributed them, so as to implicate the prospect that the images might be seen and circulated by others in the future.

Mr. Mendoza was subsequently indicted on one count of transporting child pornography—by virtue of his act of uploading the contraband image-files to Adobe's cloud servers—in violation 18 U.S.C. § 2252A(a)(1), (b)(1). ROA.11. He later pleaded guilty, affirming the truth of the facts recited above, without a plea agreement. ROA.109-12, 119.

***The Guidelines range***. The presentence report (PSR) calculated a Sentencing Guidelines imprisonment range of 60–71 months—the range prescribed for defendants who fall at the intersection of total offense level 25 and criminal history category I, adjusted to account for the five-year statutory minimum. ROA.283; *see* 18 U.S.C. § 2252A(b)(1); USSG § 5G1.1(c)(2). That range included enhancements predicated on the fact that one of Mr. Mendoza's photoshopped images involved the face of a minor under age 12 (two levels), the fact that he used computer software to generate the contraband images (two levels), and the fact that he made at least 10, but less than 150, such images (four levels). ROA.279-80; *see* USSG § 2G2.2(b)(2), (b)(6) & (b)(7)(A). Consistent with the Guidelines' directive, *see* USSG § 1B1.1(a)(2) & comment. (n.1(I)), these enhancements encompassed only Mr. Mendoza's actual offense of conviction (i.e., his act of knowingly uploading at least one of the contraband images to the cloud), plus any related acts or omissions that qualified as "relevant conduct" under USSG § 1B1.3(a) (i.e., his procurement of the base images, and creation of all 14 modified images).

***The non-relevant conduct flagged in the PSR***. The PSR also flagged a disturbing allegation of non-"relevant conduct," vis-à-vis I.V., that Ms. Liening reported in March of 2017—just over two years before Mr. Mendoza first created any of the contraband images underlying the instant offense. ROA.275, 277 (¶¶ 6, 13). According to the PSR, Ms. Liening reported Mr. Mendoza to local police on March

24, 2017, because she suspected he "may have molested" I.V.—then-nine years old (ROA.298)—the previous night. ROA.275 (¶ 6). Ms. Liening informed the officers that, while showering, she heard I.V. crying and yell out "Mom" as Mr. Mendoza was purportedly tucking her into bed. ROA.275 (¶ 6). Ms. Liening explained that Mr. Mendoza came to join her and claimed to have accidently hit I.V. with his elbow; whereas, when asked what happened, I.V. "stated, 'Art' and then made a circle with her mouth open and motioned her hand close and away from her mouth, [with] her hand [] in a circle shape with her thumb touching her fingertips, while saying, 'phone, phone.'"[3] ROA.275 (¶ 6). When asked the same question the next day, Ms. Liening further reported, I.V. made the same motion while stating "'teeth, teeth,'" answered, "Art," when asked "what was in her mouth," affirmed that Mr. Mendoza "had his clothes off," and stated that she saw his "private" before pointing to her mouth. ROA.276 (¶ 8).

According to the PSR, this prompted Ms. Liening to immediately break off her relationship with Mr. Mendoza and contact the police. ROA.276 (¶ 8). Officers later interviewed I.V. about the incident, but her statements and gestures that day did not clearly describe sexual abuse or sufficiently identify Mr. Mendoza. ROA.276 (¶ 9). The investigation was thus "dropped" on account of "a lack of evidence and

---

[3] I.V. was born with "[D]own [S]yndrome[,] and her communication skills are limited" as a result. ROA.298.

I.V. being unable to communicate [whether] any sexual abuse occurred." ROA.276 (¶ 11).

*The restitution requests*. The initial PSR contained no information regarding possible losses recoverable as restitution—i.e., costs incurred or reasonably projected to be incurred by I.V. or A.C. (or paid by their parents on their behalf) as a proximate result of the instant child-pornography offense, *see* 18 U.S.C. § 2259(a)–(c)—except to note that the government had yet to procure any such information.[4] ROA.236 (¶ 19). Five days before the December 2, 2024, sentencing hearing—on November 27, 2024—the probation officer filed an amended PSR stating that I.V.'s and A.C.'s mothers had each submitted written victim impact statements, attached to the amended report, "request[ing] restitution in the amount[s] of $2,347.36" (I.V.) and "$24,476.94" (A.C.). ROA.278 (¶ 20); *see* ROA.133, 304. As with the initial report, the amended PSR contained no evidence to suggest that any of the 14 contraband image files were available, or reasonably could become available, for others to access, view, or circulate.

In her statement, A.C.'s mother did not describe any expenses her daughter had incurred, or that she expected her daughter to incur, as a result of appearing in

---

[4] Section 2259(b)(3) provides that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664," which in turn provides in relevant part that "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e).

some of the 14 morphed images involved in the instant offense. In fact, she confirmed that A.C., like I.V., remains unaware that the images exist. ROA.294. Instead, the narrative portion of the statement focused exclusively on mental-health issues that *she*, A.C.'s mother, has experienced in the aftermath of (1) learning of the alleged 2017 incident (which did not involve A.C.) and witnessing the mental-health struggles of her sister—I.V.'s mother, Ms. Liening—as a result of the alleged abuse of I.V. in 2017, and (2) learning about the instant offense. *See* ROA.291-95. In doing so, A.C.'s mother confirmed that she, too, "ha[d] never seen the images" involved in the instant offense. ROA.292. All the costs that A.C.'s mother listed as underlying the $24,476.94 award she requested reflect amounts she had paid (and expected to pay in the future) for *her own* mental-health therapy sessions and prescription medications. ROA.297.

Similarly, Ms. Liening's statement focused primarily on the impact that the alleged 2017 incident had on *her* mental health and work attendance, *see* ROA.298-99, 300, though she noted several "mental issues" she observed in I.V. as a result of that earlier, unrelated incident—for instance, I.V. "would not go to bed by herself" for "a long time" after the incident, and appeared "very nervous or afraid when" Ms. Liening's "now husband" would "stay[] the night" when they were first dating. ROA.299-300. Ms. Liening made clear, however, that "[t]he crime of the pornography has not affected our work or school attendance," and that "[n]o financial losses

[had been] incurred from this crime." ROA.300. Consistent with those representations, Ms. Liening's list of the expenses underlying her $2,347.36 restitution request consisted of costs for *her* mental-health treatments, and work she missed, as a result of the alleged 2017 incident. ROA.302. Even as to the 2017 incident, Ms. Liening's statement contained no suggestion that I.V. had attended any therapy sessions or missed any school, and thus contained no evidence that Ms. Liening had incurred any related expenses.

***The oral sentence***. At sentencing, prior to hearing the parties' respective positions as to the appropriate sentence, the district court broached the topic of restitution, noting the mothers' requests and asking counsel whether they had reached any agreement. ROA.133. The prosecutor noted that no agreement had been discussed. ROA.133. Echoing that response, defense counsel explained that there'd been no time to discuss the matter with Mr. Mendoza given the late disclosure of the victim impact statements, which, counsel noted, had first arrived five days earlier with the amended PSR. ROA.133. Nevertheless, counsel "request[ed] some time to resolve that." ROA.133.

The district court intimated it would "leave the restitution issue open at this point" and registered its "hope that" the parties would be able to "reach an agreement." ROA.134. The prosecutor subsequently made no effort to demonstrate that any of the monetary figures underlying the late-disclosed restitution requests were

proximately caused by the offense of conviction, as opposed to the unrelated 2017 incident, or that they came within the meaning of the "victim's losses"—past or future "costs incurred . . . by the victim," i.e., "the individual harmed as a result of a commission of a [child- pornography] crime"—as defined in 18 U.S.C. § 2259(c)(2) & (4).[5] The prosecutor stated only that the government was "agreeable to deferring restitution for 90 days to make that determination."[6] ROA.153. As foreshadowed, the district court later pronounced that "[t]he restitution amount [would be] left open for 90 days." ROA.171.

On imprisonment, the prosecutor urged the district court to account for the alleged 2017 incident—which he acknowledged was "unrelated" and "extraneous" to the instant child-pornography offense (ROA.149, 166)—by varying above the applicable Guidelines range to a sentence of 15 years. ROA.147-50, 153, 165-66. Defense counsel, in contrast, advocated for a minimum five-year term. ROA.153-61.

---

[5] In defining "victim," paragraph (c)(4) provides that where the individual harmed by commission of a qualifying crime "is under 18 years of age," a "legal guardian . . . may assume the crime victim's rights under this section." 18 U.S.C. § 2259(c)(4).

[6] The prosecutor thus invoked the statutory provision that permits a district court to defer "final determination of the victim's losses" for a period "not to exceed 90 days after sentencing"—*provided* that "the attorney for the Government or the probation officer" has "inform[ed] the court" that "the victim's losses are not ascertainable by the date that is 10 days prior to sentencing." 18 U.S.C. § 3664(d)(5); *see id.* § 2259(b)(3) (incorporating Section 3664's procedural requirements). There is no record of the prosecutor or the probation officer so informing the district court here. And the prosecutor neither suggested, nor attempted to show, that any costs that I.V. or A.C. incurred as a result of the instant offense could not have been ascertained within the contemplated timeframe.

The court agreed with the prosecutor that the 2017 incident with I.V. was not accounted for in the Guidelines recommendation and thus warranted an upward variance, though to a lesser extent. ROA.169-70. The court accordingly sentenced Mr. Mendoza to 120 months in prison, with 10 years of supervised release to follow, and a $100 special assessment. ROA.170. In light of Mr. Mendoza's indigence, the court imposed no fine and no further monetary assessment. ROA.171.

*Discretionary supervised-release conditions*. In pronouncing sentence, the district court adopted-by-reference the "standard" discretionary release conditions set out in a district-wide standing order, as well as the "special" conditions "noted in the appendix of the" PSR. ROA.170-71; *see* ROA.287-89 (appendix). Two of those special conditions are relevant to the instant appeal. The first, labeled, "Financial Disclosure," requires Mr. Mendoza to "provide the probation officer with access to any requested financial information and authorize the release of any financial information," which "[t]he probation office may share . . . with the U.S. Attorney's Office." ROA.289. The second, entitled, "Financial No new Debt/Credit," forbids Mr. Mendoza to "incur new credit charges or open additional lines of credit without the approval of the probation officer." ROA.289.

*Location monitoring*. At the prosecutor's behest, however, a new discretionary condition also entered the fray. ROA.172. Citing concerns over perceived gaps in the pronounced sex-offender conditions—which, among other things, prohibit Mr.

11

Mendoza from interacting with, going near, or sharing the same living space as any minors (other than his own children) while on supervised release, *see* ROA.287-88, the prosecutor raised the prospect of "house arrest" coupled with location monitoring. ROA.172. The district court agreed that some form of monitoring "would be appropriate," leaving the specific "technology" to the probation officer's discretion. ROA.172-73.

As to duration, the prosecutor requested that Mr. Mendoza be monitored for all 10 years of his term of supervision, while defense counsel objected, expressing that he believed location monitoring could not span an entire term of supervised release, but admittedly was unsure given that the prospect of monitoring had come up for the first time in the final moments of the hearing. ROA.174. The prosecutor, also unsure as to this point, suggested the parties could "have that discussion"—i.e., about the permissible length of location monitoring on supervised release—"if the Court wishes while [they] are working on restitution." ROA.174. The court acquiesced, acknowledging that it "d[id]n't know the answer to that, frankly, at all." ROA.174. Thus, no duration for the monitoring condition was pronounced.

The discussion then turned to form. The following colloquy ensued:

| | |
|---|---|
| Probation Officer 1: | Also, Your Honor, for the location monitoring, will that [be] home detention? Home confinement? |
| The Court: | No. |

| | |
|---|---|
| Probation Officer 1: | So are you just going to -- during the time of restitution, that will be determined? |
| The Court: | Just location monitoring. |
| Probation Officer 1: | Okay. |
| The Court: | But no home detention. No. |
| Probation Officer 1: | Okay. Well, there needs to be a component. So I guess home confinement is the least limiting for location monitoring. |

ROA.174. At this point, defense counsel interjected that "standalone" monitoring would be preferable. ROA.174-75. That prompted this discussion:

| | |
|---|---|
| The Court: | Standalone monitoring? |
| Probation Officer 2: | Yes. Susan Calder with U.S. Probation. And, yes, we can -- standalone monitoring is the ankle monitoring where they're restricted to, like, the Southern District of Texas Houston Division, but they can come and go as they want. Curfew would be they would have to be home by a certain time, and then home detention is where they would have to submit scheduling to leave the house, like, which he is currently doing [on pretrial release]. |
| The Court: | Okay. So we have to pick between one of those? |
| Probation Officer 2: | Yes, Your Honor. We are not authorized to pick. The Court has to pick. |
| The Court: | Standalone monitoring I think would be sufficient. |

ROA.175.

***The written judgment***. The judgment issued 10 days later. ROA.81. It recited verbatim all of the "special" conditions recommended in the PSR appendix, including the financial-disclosure and credit-approval conditions. ROA.84-85. The judgment added the following "Location Monitoring" condition:

<u>*Location Monitoring</u>
You will be monitored by the form of location monitoring technology indicated below for a period of ____, and you must follow the rules and regulations of the location monitoring program. You must pay the costs of the program, if financially able.

☒ Location monitoring technology at the discretion of the probation officer

This form of location monitoring technology will be used to monitor the following restriction on your movement in the community:

☒ **Home Detention**: You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as preapproved by the officer.

*The length of time will be determined during the restitution hearing.

ROA.85. Mr. Mendoza timely appealed. ROA.88-89.

***The abandoned restitution hearing***. Ninety days passed after entry of the judgment and notice of appeal, but the government did not pursue the deferred restitution hearing it originally requested. No hearing was ever set, much less held. *See* Docket, *United States v. Arturo Mendoza*, No. 4:22-cr-343 (S.D. Tex.).

## SUMMARY OF THE ARGUMENT

Three issues, all arising from the conditions placed on Mr. Mendoza's 10-year term of supervised release, warrant this Court's intervention.

**I.** First, the judgment mistakenly reflects that the district court imposed location monitoring coupled with "home detention" when, in fact, the court expressly rejected home detention in favor of "standalone" location monitoring—the defining characteristic of which is that the monitored individual is not confined to quarters at all but preapproved times, but is instead free to move about the district of supervision. Because the controlling oral pronouncement is so clear on this point, the judgment's inclusion of "home detention" monitoring constitutes both a clerical error and an impermissible conflict. This Court should accordingly vacate the judgment and remand with instructions for the district court to amend the judgment to reflect the "standalone" location monitoring it in fact imposed.

**II.** Second, the district court plainly erred by failing to determine the length of time that Mr. Mendoza would be subject to "standalone" location monitoring. That error is obvious and also affects substantial rights, given that setting any duration will necessarily change the outcome. And this is an ordinary case in which no countervailing factors counsel against correcting the plain and prejudicial sentencing error. The Court's remand order should thus instruct the district court to decide how long Mr. Mendoza will be subject to the standalone-monitoring condition.

**III.** Third, the district court plainly erred in ordering Mr. Mendoza to comply with supervised-release conditions requiring that he (1) disclose any financial information that his supervising probation officer requests, and (2) seek and obtain the probation officer's approval before using existing lines of credit or opening up new ones. The record contains no evidence that either Mr. Mendoza's instant crime, or any wrongdoing in his past, had any connection to money, finances, or credit. The district court neither "impose[d] an order of restitution, forfeiture, or notice to victims, [n]or order[ed] [Mr. Mendoza] to pay a fine." USSG § 5D1.3(d)(3) (p.s.). And, consequently, Mr. Mendoza has no "installment schedule of payment," or other court-imposed financial obligation, that might plausibly be outstanding in 10 years' time. *Id.* § 5D1.3(d)(2) (p.s.).

The two monetary-based conditions thus bear no relationship to the relevant statutory sentencing factors, are more burdensome than reasonably necessary to further those factors, and are squarely inconsistent with the Sentencing Commission's relevant policy statements. That places the conditions plainly out of sync with the three 18 U.S.C. § 3583(d) criteria. Striking the unwarranted conditions, moreover, necessarily alters the sentencing outcome. And here, too, the record discloses no countervailing factors. Accordingly, the remand order should include instructions to strike the financial-disclosure and credit-approval conditions as well.

# ARGUMENT

**I.    The judgment should be corrected because it inaccurately reflects the district court's controlling oral sentence as to the form of "location monitoring" imposed as a condition on Mr. Mendoza's supervised release.**

## A.   Standards of review

This Court may review clerical errors in a judgment for the first time on appeal and remand for correction of such errors. *See United States v. Powell*, 354 F.3d 362, 371 (5th Cir. 2003) (citation omitted); Fed. R. Crim P. 36 ("[T]he court may at any time correct a clerical error in a judgment . . . .").

"Abuse-of-discretion review typically applies to conditions of supervised release, but plain-error review applies if the defendant fails to object in the district court." *United States v. Scott*, 821 F.3d 562, 570 (5th Cir. 2016). A defendant has no opportunity to object, however, where the written judgment includes a release condition that was not pronounced, *see United States v. Bigelow*, 462 F.3d 378, 381 (5th Cir. 2006), or purports to broaden a condition beyond what was pronounced. *See id.* at 383-84. In those circumstances—the latter of which is present here—the question whether the written condition conflicts with the controlling oral sentence is reviewed for abuse of discretion. *Id.* at 381.

**B.  The judgment reflects location monitoring coupled with home detention, but the district court expressly rejected that approach in favor of "standalone" location monitoring.**

The judgment should be corrected because it erroneously memorializes the form of location monitoring that the district court pronounced as a discretionary condition of supervised release. At sentencing, the court unambiguously pronounced that location monitoring would be "standalone," and did so in the context of unambiguously rejecting "home detention."[7] Yet the judgment provides that location monitoring will be coupled with "the following restriction on [Mr. Mendoza's] movement in the community: **Home Detention**[.]" ROA.85 (bold in original). The best explanation for this obvious contradiction is that a clerical mistake occurred in the process of reducing the pronounced location-monitoring condition to written form. The Court should accordingly order the district court to "correct [this] clerical error." Fed. R. Crim. P. 36.

Moreover, clerical or not, this error also creates an impermissible conflict between the oral and written sentences. A judge's oral pronouncement of sentence controls over a later-issued judgment in the event of a conflict between the two. *See*

---

[7] *See* ROA.174 (**Probation Officer 1**: "Also, Your Honor, for the location monitoring, will that [be] home detention? Home confinement?" **The Court**: "No." **Probation Officer 1**: "So are you just going to -- during the time of restitution, that will be determined?" **The Court**: "Just location monitoring." **Probation Officer 1**: "Okay." **The Court**: "But no home detention. No."); ROA.175 (**The Court**: "Okay. So we have to pick between one of those [i.e., home detention, curfew, and standalone monitoring]?" **Probation Officer 2**: "Yes, Your Honor. We are not authorized to pick. The Court has to pick." **The Court**: "Standalone monitoring I think would be sufficient.").

*Bigelow*, 462 F.3d at 381 (citing *United States v. Martinez*, 250 F.3d 941, 942 (5th Cir. 2001)). In this context, a conflict exists if the unpronounced aspect of a release condition "broadens the restrictions or requirements of supervised release," *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006) (citations omitted), making it "more burdensome" than the pronounced conditions. *Bigelow*, 462 F.3d at 383.

That is the case here. To be sure, Mr. Mendoza's physical location will be tracked under either version of the condition. But, as the probation officer aptly explained at sentencing, there is a material difference in the degree to which the two versions restrict the supervisee's freedom of movement. The "standalone" version, the probation officer noted, does not restrict the monitored person's ability to move freely within the district of supervision in any way: "standalone monitoring is the ankle monitoring where" the supervisee is "restricted to, like, the Southern District if Texas Houston Division, but they can come and go as they want." ROA.175. The "home detention" variant, in contrast, "is where [the supervisee] would have to submit scheduling to leave the house." ROA.175. Or, as the written judgment puts it: home detention "restrict[s] [you] to your residence at all times except for" a list of enumerated activities, "or other activities as preapproved by the [probation] officer." ROA.85. That plainly "broadens the restriction[]," *Mireles*, 471 F.3d at 558, on Mr. Mendoza's liberty beyond that of the pronounced standalone-monitoring condition.

**C.  Whether viewed as a clerical error or conflict between the written and oral sentences, the judgment's failure to reflect the right form of location monitoring warrants correction.**

As just explained, Mr. Mendoza contends that the judgment's mistaken inclusion of "home detention" location monitoring, rather than the "standalone" location monitoring the district court in fact pronounced, is accurately characterized both as a clerical error that is correctable under Rule 36, and a conflict between the oral and written sentences. Regardless, the appropriate remedy is the same: the judgment should be vacated, and the case remanded with instructions for the district court to issue an amended judgment reflecting the controlling, orally pronounced condition. *See, e.g.*, *United States v. Prado*, 53 F.4th 316, 319 (5th Cir. 2022); *Bigelow*, 462 F.3d at 383-84.

## II.  The district court plainly and reversibly erred by failing to determine the duration of the standalone-monitoring condition.

### A.  Standard of review

As noted, unobjected-to conditions of supervised release are reviewed for plain error. *Scott*, 821 F.3d at 570. Plain-error review requires the Court to "decide (1) if there was error, (2) if it was plain, (3) if the error affects substantial rights, and (4) if allowing that error to stand seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Duke*, 788 F.3d 392, 396 (5th Cir. 2015) (cleaned up).

A "plain" error is one that is sufficiently clear and obvious to put the "legal question" beyond "reasonable dispute." *United States v. Fields*, 777 F.3d 799, 802 (5th Cir. 2015). Such an error affects substantial rights if there is a reasonable probability that correction would alter the outcome. *United States v. Huor*, 852 F.3d 392, 403 (5th Cir. 2017). Absent countervailing circumstances, a rights-affecting error in imposing sentence—including the conditions of supervised release—ordinarily merits correction. *United States v. Herndon*, 807 F. App'x 286, 291 (5th. Cir. 2020) (citing *Rosales-Mireles v. United States*, 585 U.S. 129, 139-45 (2018); *United States v. Campos*, 922 F.3d 686, 689 (5th Cir. 2019)).

## B.   The district court's failure to determine how long Mr. Mendoza's location will be monitored on supervised release is an error that is obvious, prejudicial, and worthy of correction.

At sentencing, the parties disputed how long Mr. Mendoza would be subject to the location-monitoring condition—for the entire 10 years of supervision, or some lesser duration. But, in light of shared confusion over how long the monitoring condition *could* last, the district court, with the parties' assent, elected to pretermit the duration determination until the anticipated, but later abandoned, deferred restitution hearing. As a result, the court never determined the length of time that Mr. Mendoza will be subject to the pronounced "standalone" location-monitoring condition.

This was an obvious error. A district court has discretion to order an imposed release condition to last for only portion of the defendant's full term of supervised

release (or probation). *E.g.*, 18 U.S.C. § 3563(b)(10)-(11) (contemplating conditions involving intermittent confinement "during the first year of the term of probation or supervised release, and residence at a halfway house "for all or part of the term of probation"); *see id.* § 3583(d) (incorporating conditions listed in Section 3563(b)). Consistent with this Court's precedent, the length of a time a supervised defendant will have his location monitored remotely is likely a matter that falls within the "'core judicial function' of imposing a sentence" that the district court cannot permissibly delegate to a probation officer. *United States v. Mejia-Banegas*, 32 F.4th 450, 451-52 (5th Cir. 2022) (quoted source omitted). Just as a district court may not "surrender 'the final say' on whether to impose' a condition of supervised release," it "cannot leave to the probation officer details of a condition involving 'a significant deprivation of liberty.'" *Id.* at 452 (quoted sources omitted). The difference between the liberty intrusion involved in a supervisee's location being remotely monitored at all times, and in not having their whereabouts monitored at all, is plainly significant. How long that monitoring lasts thus directly impacts the degree of the intrusion. And, unlike treatment programs, location monitoring is not a condition that relies on the probation officer's "superior knowledge of [a defendant]'s situation and performance in the program" to assess whether the program should be extended or cut short (or intensified or eased). *United States v. Ortega*, 19 F.4th 831, 834 (5th Cir. 2021).

There's no need to answer the delegation question here, however, because the district court expressly declined to delegate the duration decision to probation, and instead made clear that *it* would make that decision at the deferred restitution hearing the prosecutor requested but later abandoned. ROA.173-74; *accord* ROA.85 (asterisk noting that "[t]he length of time [of the location monitoring] will be determined during the restitution hearing"). This case, therefore, is much easier: the court simply never exercised its discretion with respect to the length of—and thus, degree of liberty restriction imposed by—this condition of supervised release. Indeed, the Supreme Court has long held that a district court commits an error of law, and so abuses its discretion, where it fails to adequately *explain* a ruling committed to its discretion by statute, when that statute conditions the discretionary decision on the court's "consideration of particular factors." *United States v. Taylor*, 487 U.S. 326, 336-37 (1988); *see id.* at 337 (noting that a discretionary "judgment that must be arrived at by considering and applying statutory criteria, . . . constitutes the application of law to fact and requires the reviewing court to undertake more substantive scrutiny to ensure that the judgment is supported in terms of the factors identified in the statute"). Section 3583(d)(2) does just that, tethering the permissible degree of liberty deprivation a discretionary condition of supervised release may impose to the sentencing factors outlined in 18 U.S.C. § 3553(a)(2)(B)–(2)(D). In failing to determine the duration of the standalone-monitoring condition, the district court not only failed

to "carefully consider" the statutory criteria and "clearly articulate their effect," *Taylor*, 487 U.S. at 336, but failed to exercise its discretion to begin with.

That plain error merits correction. First, the error affects Mr. Mendoza's substantial rights. Right now, there is no duration assigned to the location-monitoring condition. ROA.85, 173-74. Assigning any duration on remand, then, will necessarily alter that component of the sentence. Accordingly, a different outcome is not only probable, but certain, to result from the error's correction.

And this is an ordinary case in which letting an obvious and prejudicial sentencing error stand would seriously affect the fairness, integrity, and public reputation of judicial proceedings. For one, remand is already necessary to correct the judgment's failure to accurately reflect the aspect of this very condition that the district court did pronounce—i.e., that the condition should entail "standalone," not "home detention," location monitoring.

Moreover, leaving the duration of location monitoring undecided could result in Mr. Mendoza being subject to that more-severe (as compared to no monitoring) privacy intrusion for longer than he otherwise would. At present, the district court's failure to determine the duration of the monitoring condition effectively leaves that decision entirely to the discretion of the supervising probation officer. Given that the court did clearly express its desire for Mr. Mendoza's location to be monitored for some period of time on supervision, it is neither reasonable to suppose, nor prudent

for Mr. Mendoza to assume, that the probation officer assigned to monitor him in 10 years' time will interpret the blank space on the judgment to mean that there should be no period of location monitoring. It is more likely—and indeed, probable—that the officer would default to the assumption that the monitoring condition should span the entire 10-year term of supervision.

In a similar vein, the court's failure to determine how long the monitoring condition will last also effectively deprives Mr. Mendoza of the opportunity to challenge that condition as a "greater deprivation of liberty than is reasonably necessary" to serve the relevant sentencing factors, *see* 18 U.S.C. § 3583(d)(2); *cf. Taylor*, 487 U.S. at 336-37, in his only opportunity to do so—this direct appeal. A period of six months' monitoring may well be adequately tailored; but Mr. Mendoza certainly would contend that the prosecutor's requested duration—all 10 years of his term of supervision—exceeds what is necessary to serve the enumerated factors, particularly in light of the serious residency, occupational, and associational restrictions imposed by several other conditions that will run for the whole 10-year term.

Accordingly, this Court should exercise its discretion to correct this plain error by vacating the judgment and remanding with instructions for the district court to determine the length of the "standalone" location-monitoring condition.

**III.  The district court plainly and reversibly erred by ordering Mr. Mendoza to comply with financial-disclosure and credit-approval conditions of supervised release.**

**A.  Standard of review**

As with the durational aspect of the standalone-monitoring condition addressed above, Mr. Mendoza did not object to the financial-disclosure and credit-approval conditions at issue here. Accordingly, the same plain-error standard applies. *See Scott*, 821 F.3d at 570.

**B.  Both monetary-based conditions should be stricken because each plainly lacks record support.**

Among the release conditions the district court adopted by reference to the PSR appendix were conditions that (1) require Mr. Mendoza to "provide the probation officer with access to any requested financial information and authorize the release of any financial information," which "[t]he probation office may share . . . with the U.S. Attorney's Office," and that (2) forbid Mr. Mendoza from "incur[ring] new credit charges or open[ing] additional lines of credit without the approval of the probation officer." ROA.85, 289. As to each condition, the probation officer cited the same "Justification": "Based upon the defendant owing restitution, these financial conditions are recommended." ROA.289. But the underlying assumptions—that there were any qualifying losses attributable to the instant offense to begin with, and that the court would accordingly order a restitution award—proved to be unsound. There is no evidence to support a restitution award in the record; the government

rightly abandoned any attempt to seek restitution based on purported losses not attributable to the instant offense; and, most importantly, the district court in fact imposed no restitution order. The financial-disclosure and credit-approval conditions are thus plainly unfounded. And all the criteria for plain-error relief are satisfied.

Section 3583 of Title 18 affords sentencing courts "wide discretion" to impose special (i.e., non-mandatory) conditions on a defendant's term of supervised release. *United States v. Salazar*, 743 F.3d 445, 451 (5th Cir. 2014); *see* 18 U.S.C. § 3583(d). That discretion is circumscribed, however, in three important ways.

*First*, a special condition must be "reasonably related to the factors set forth in" subsections (a)(1), (a)(2)(B), (a)(2)(C), or (a)(2)(D) of Section 3553. 18 U.S.C. § 3583(d)(1). That is, the condition must bear a reasonable relationship to (1) the nature and circumstances of the instant offense and history and characteristics of the defendant, or to the goals of (2) adequately deterring crime, (3) protecting the public, or (4) providing the defendant with "needed" treatment "in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(D). "A condition satisfies th[is] requirement[] if it is reasonably related to any of the four factors." *Salazar*, 743 F.3d at 451. *Second*, a special condition must also "involve[] no greater deprivation of liberty than is reasonably necessary" to advance the latter three goals listed above: deterrence, public protection, or needed corrective treatment. 18 U.S.C. § 3583(d)(2). That is, in addition to being reasonably related to one or more of the relevant factors,

a special condition must be "narrowly tailored." *Duke*, 788 F.3d at 398. And *third*, all reasonable and appropriately tailored special conditions must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3). Where a challenged discretionary condition is "unsupported by the record evidence," the appropriate remedy is to "vacate and strike" the offending condition. *United States v. Gordon*, 838 F.3d 597, 604 (5th Cir. 2016).

Compelling Mr. Mendoza to turn over any financial information for inspection, and prohibiting him from using or seeking credit without advance approval, plainly violates each of Section 3583(d)'s three criteria. There is no evidence that Mr. Mendoza's offense involved money, or that it was motivated in any part by monetary considerations. He has no criminal history, *see* ROA.280 (¶¶ 37-42), let alone a history of having engaged in monetary, finance, or credit-related misconduct or malfeasance. There is, therefore, no reasonable basis to conclude that requiring him to disclose his finances upon his probation officer's request, or seek the officer's advance approval to do basic things like get a credit card or obtain a pay-day loan, would deter future crimes, protect the public, or effectively enable rehabilitative efforts. That is particularly the case in light of the many other conditions—not challenged here—that are specifically targeted at deterring the type of criminal conduct involved in both the underlying offense and the alleged 2017 abuse incident, protecting both the victims of that conduct and the public at large from future recurrence

of similar conduct, and securing adequate treatment for the underlying cognitive and behavioral pathologies that contributed to producing that conduct in the first place. *See* ROA.84-85. The financial-disclosure and credit-approval conditions thus bear no reasonable relationship to the relevant factors, and, like all unjustified release conditions, are more burdensome than is reasonably necessary to serve those factors.

In addition to failing at the reasonable-relation and narrowly-tailored prongs, both monetary-based conditions are inconsistent with the Sentencing Commission's policy statements. Each condition tracks a condition that the Commission "recommend[s] in the circumstances described" in USSG § 5D1.3(d)(2) & (3) (p.s.).[8] The first, entitled "debt obligations"—and referred to in this brief as the credit-approval condition—is recommended "[i]f an installment schedule of payment of restitution or a fine is imposed" *Id.* § 5D1.3(d)(2) (p.s.). The second—named "access to financial information," and discussed here as the financial-disclosure condition—is recommended "[i]f the court imposes an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine." *Id.* § 5D1.3(d)(3) (p.s.).

The recommendation-triggering circumstances are not present here. The district court "waive[d]" any fine. Mr. Mendoza is under no restitution obligation. And

---

[8] Policy Statement 5D1.3(d) allows that, in addition to the specific circumstances described, the listed special conditions "may otherwise be appropriate in particular cases." USSG § 5D1.3(d) (p.s.). But, as just shown, these conditions lack any discernible connection to Mr. Mendoza, his instant offense, or his history.

that will not change, given that the government—unsurprisingly, in light of the absence of any evidence of recoverable restitutionary losses linked to the instant offense—abandoned any effort to prove up a restitution amount in declining to pursue the deferred hearing it requested within the statutorily prescribed 90-day deadline. *See supra*, at 10 n.6. Even if monetary assessments were covered (despite not being mentioned) by these policy statements, the district court expressly declined to impose a "further Justice for Victim's [of] Trafficking Act assessment" in light of Mr. Mendoza's "indigen[ce]." ROA.171. Moreover, the only monetary penalty the court did impose—the mandatory $100 special assessment—did not result in an installment payment schedule. And, in any event, there is no plausible basis to think that the $100 assessment would remain unpaid when Mr. Mendoza's supervised-release term begins to run in 10 years' time.

This plain error affects substantial rights and warrants correction. First, the appropriate remedy—striking the unsupported conditions—will necessarily alter the outcome: the supervised-release component of Mr. Mendoza's sentence will not be conditioned on his compliance with the financial-disclosure and credit-approval requirements. *See Huor*, 852 F.3d at 403 ("[W]e 'easily conclude that the district court's error affected [Huor's] substantial rights' because '[h]ad the error not oc-

curred, [Huor] would not have been subjected to the unwarranted special condition.'" (quoting, with alterations, *United States v. Prieto*, 801 F.3d 547, 553 (5th Cir. 2015)).

Second, leaving the unsupported conditions in place would seriously undermine the fairness, integrity, or public reputation of judicial proceedings. Like the failure to determine the duration of the location-monitoring condition, this is a plain and prejudicial sentencing error that should ordinarily be corrected.

And there are no countervailing circumstances. The crime had no relationship to money. Mr. Mendoza has no history of monetary related or motivated misconduct. And the types of criminal conduct he *has* engaged in (to include, for sake of argument, the alleged 2017 incident) are not the sort that would be revealed by any financial information the probation officer might request, or by Mr. Mendoza's desire to use credit. As this Court has admonished, "[c]onditions of supervised release must serve the purposes of § 3553(a) and may not merely represent stumbling blocks." *Huor*, 852 F.3d at 402. If left in place, that is all these two conditions would be.

Moreover, the government's abandonment of any claim that the instant offense warranted restitution is consistent with the total absence of record evidence of recoverable losses. There is no evidence indicating that the morphed images Mr. Mendoza created are available, or could reasonably become available, for others to access or trade, and thus no factual basis to assume either victim will incur any costs

"as a result of [any future] trafficking" in the images. 18 U.S.C. § 2259(b)(2)(A). The only expenses claimed by the victims' mothers derived not from the instant morphed-image offense, but the alleged 2017 incident—which, as non-offense conduct, could not form the basis of a legally valid restitution award under Section 2259. *See Paroline v. United States*, 572 U.S. 434, 445 (2014) (observing that "a straightforward reading of § 2259(c) indicates that the term 'a crime' [as used in the definition of 'victim'] refers to the offense of conviction" (citing *Hughey v. United States*, 495 U.S. 411, 416 (1990)). Indeed, in her victim-impact submission, I.V.'s mother expressly confirmed that "no financial losses [were] incurred from this crime," either by her, or by I.V. ROA.300. In short, an award of restitution on these facts would have itself constituted reversible error. *Cf., e.g.*, *United States v. Etheridge*, No. 22-40516, 2023 WL 5347294, at *4 (5th Cir. Aug. 21, 2023) (vacating Section 2259 restitution award where "neither the victims nor the Government submitted any evidence of costs," and "[t]he only victim impact form filed in th[e] case expressly note[d] that no costs were incurred and that no further counseling sessions were yet anticipated"); *United States v. Villalobos*, 879 F.3d 169, 171-72 (5th Cir. 2018) (same, as to award imposed in the absence of documentation of the cost of victim-child's therapy sessions).

There is, therefore, no basis in this record to conclude that "the fairness, integrity, and public reputation of the proceedings will be preserved," *Rosales-Mireles*,

585 U.S. at 142, by leaving Mr. Mendoza subject to the unwarranted financial-dis-closure and credit-approval conditions despite the absence of any fine, restitution award, or other financial obligation that he will have to satisfy while under supervision. The conditions should therefore be vacated and ordered stricken.

## CONCLUSION

The Court should vacate the judgment and remand with instructions for the district court to (1) issue an amended judgment reflecting the correct form of "standalone" location monitoring, (2) determine the length of time that Mr. Mendoza will be subject to "standalone" location monitoring while on supervised release, and (3) strike the financial-disclosure and credit-approval conditions from the amended judgment.

<div style="margin-left:40%">

Respectfully submitted,

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

s/ *Evan G. Howze*

EVAN G. HOWZE
Assistant Federal Public Defender
Attorney for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002
(713) 718-4600

</div>

## CERTIFICATE OF SERVICE

This brief was served upon counsel for the appellee by notice of electronic filing with the Fifth Circuit CM/ECF system.

s/ *Evan G. Howze*
E. G. H. (EVAN G. HOWZE)

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) & (f) because it contains 7,284 words.

2.  This brief complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared with the current version of Microsoft Word software, Microsoft Office 365 edition, using the proportionally spaced, Times New Roman typeface in both the text (14-point) and footnotes (12-point).

3.  This brief was filed electronically, in native Portable Document File (PDF) format, via the Fifth Circuit's CM/ECF system.

4.  This brief complies with the privacy-redaction requirement of 5th Cir. R. 25.2.13 because it has been redacted of any personal data identifiers.

5.  This brief complies with the electronic-submission requirement of 5th Cir. R. 25.2.1 because it is an exact copy of the paper document.

6.  This brief has been scanned for viruses with the most recent version of a commercial antivirus scanning program and is free of viruses.

s/ *Evan G. Howze*
EVAN G. HOWZE